**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION**

| | |
|---|---|
| JOEL SCHNEIDER and NATALIA STREET, | ) |
| Plaintiffs, | ) |
| | ) Case No. 1:22-cv-1031 |
| v. | ) |
| THE CITY OF CHICAGO, | ) |
| Defendant. | ) |

**COMPLAINT**

NOW COMES Plaintiffs, Joel Schneider ("Joel") and Natalia Street ("Natalia") by and through their undersigned counsel, and for their Complaint against Defendant City of Chicago ("Chicago"), states as follows:

**INTRODUCTION**

1. This is a suit for unlawful discrimination under the Illinois Healthcare Right of Conscience Act, 745 Ill. Comp. Stat. 70/1 *et seq* (the "Conscience Act") and the Illinois Religious Freedom Restoration Act, 775 Ill. Comp. Stat. 35/1 *et seq*. (the "Religious Freedom Act").

2. For 18 months, since August 2020, Joel and Natalia had been engaged to get married at the Drake Hotel in Chicago. They both have sincere religious opposition to getting the COVID-19 vaccines, however, neither of them had an occasion to receive a religious exemption to these vaccines.

3. In late December 2021, approximately one month before Joel and Natalia's wedding on February 5, 2022, Chicago announced that beginning January 4, 2022, Joel, Natalia, and other unvaccinated people would need to get vaccinated in order to enter hotel ballrooms and other

1

indoor establishments. While this Mandate had a religious exemption, it was limited to people who had "previously received" an exemption. As they had never received an exemption, Joel and Natalia could not fall within this exemption, and Chicago's Mandate forced them to cancel their wedding.

## JURISDICTION

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a)(1) because, as detailed further below, Plaintiffs and Defendants are citizens of different States and the matter in controversy, exclusive of interest and costs, exceeds $75,000.00.

## PARTIES AND VENUE

5. Plaintiff Joel Schneider resides in and is a citizen of the State of Wisconsin.

6. Plaintiff Natalia Street resides in and is a citizen of the State of Wisconsin.

7. Defendant City of Chicago is an Illinois municipal corporation. Pursuant to 28 U.S.C. §1391(c)(2), Chicago is a resident of this District.

8. Venue is properly in this District pursuant to 28 U.S.C. §1391(b)(1) because Chicago is a resident of this District.

## BACKGROUND

9. Ever since she was a little girl, Natalia dreamed that she would get married at her favorite hotel, the legendary Drake Hotel in Chicago.

10. Years later, Natalia met Joel and the two began dating. As their relationship progressed, and the two began discussing marriage plans, Natalia showed the Drake to Joel, who similarly fell for the Hotel's magnificence.

11. Even before they agreed to marry, on August 24, 2020, Joel and Natalia booked their wedding at the Drake. Their date: February 5, 2022.

12. With her dream wedding at the Drake booked, on October 8, 2020, Natalia accepted Joel's proposal for her hand in marriage.

13. Joel and Natalia possess sincerely held moral convictions that arise from their belief in and relation to God, among them that God has revealed to them that their human bodies are vessels of the Divine spark of life, and they must live their lives consistent with that transcendent reality. Furthering this principle, God prohibits them from injecting foreign material—like engineered genetic viral material from the COVID-19 vaccines—into their bodies. Joel and Natalia know that God considers these COVID-19 injections a defilement of their body, blood and soul. To accept these vaccines would be to reject the trust they have in the natural healing powers God bestowed upon them. As such, Joel's and Natalia's consciences, as that term is defined in section 3(e) of the Conscience Act at 745 Ill. Comp. Stat. 70/3(e), prevents them from receiving any of the COVID-19 vaccines.

14. In early September 2021, the FDA approved Pfizer's Comirnaty vaccine, which catalyzed entities like governments and employers to begin imposing vaccination or testing requirements.

15. As recently as December 7, 2021, however, Lori Lightfoot, Chicago's Mayor, reassured the public that Chicago would not require proof of vaccination for indoor spaces, as cities like New York had done recently: "We will not see that here in the city of Chicago. And frankly there's a question of whether something like that is going to sustain what will invariable come as judicial review." *See Will New York City's Private Sector COVID Vaccine Mandate Come to*

*Chicago?*, NBC Chicago, *available at*: https://www.nbcchicago.com/news/will-new-york-citys-private-sector-covid-vaccine-mandate-come-to-chicago/2701350 (last updated Dec. 13, 2021).

16. But around two weeks later, on or about December 21, 2021, Mayor Lightfoot announced that Chicago would begin requiring proof of vaccination, starting on January 4, 2022, just after New Year's Day (the "Mandate"). Mayor Lightfoot tweeted, "To put it simply, if you have been living vaccine-free, your time is up. If you wish to live life as w/the ease to do the things you love, you must be vax'd. This health order may pose an inconvenience to the vaccinated, and ***in fact it is inconvenient by design***."[1]

17. Among other venues, the Mandate required people attending "banquet halls" and "hotel ballrooms" to present proof of full vaccination against COVID-19, unless exempt from the requirements.

18. Several groups of people are exempt from the Mandate, among them unvaccinated performing artists and professional athletes, along with unlimited numbers of their unvaccinated entourage.

19. The Mandate also exempted "Individuals who have previously received a medical or religious exemption," so long as the individual provides the venue with (i) the previously-received exemption and (ii) a COVID-19 test "administered by a medical professional within the last 72 hours."

---

1  Lori E. Lightfoot (@chicagosmayor), *available at*:
   https://twitter.com/chicagosmayor/status/1473382110576594948 (Dec. 21, 2021, 1:57 p.m.)
   (emphasis added).

20. On or about December 23, 2021, the Drake sent notice to Joel and Natalia that they would be denied entry to the Hotel unless they provided it with proof of a previously-received religious exemption.

21. Neither Joel nor Natalia have ever received a religious exemption from the COVID-19 vaccines, however. As they have never received religious exemption from these vaccines, it was impossible for either of them to fall within the Mandate's exemption for religious opposition.

22. On December 30, 2021 and January 4, 2022, Joel and Natalia, through counsel, attempted to contact Chicago's corporate counsel for clarification about what Mandate meant when it referred to "previously received" exemptions. No one has ever returned their calls.

23. Joel and Natalia's wedding contract with the Drake provided that the estimated amount due, above their earlier deposits, was due on January 5, 2022.

24. With frantic calls to Chicago's legal department unanswered, Joel and Natalia made the devastating decision to cancel their dream wedding.

25. Although the Drake agreed to refund 25% of the deposits they made, the Mandate caused Joel and Natalia to lose their $36,000 deposit, as well as a $1,650 deposit for makeup and salon services.

## ILLINOIS PUBLIC POLICY

26. Section 2 of the Health Care Right of Conscience Act (the "Act") provides in pertinent part that, "It is the public policy of the State of Illinois to respect and protect the right of conscience of all persons who refuse to obtain, receive or accept . . . health care services and medical care . . . and to prohibit all forms of discrimination, disqualification, [or] coercion . . .

upon such persons or entities by reason of their refusing to act contrary to their conscience or conscientious convictions in . . . refusing to obtain, receive, [or] accept . . . health care services and medical care." 745 Ill. Comp. Stat. 70/2.

27. Section 3(a) of the Act defines "[h]ealth care" in pertinent part as "testing; diagnosis; prognosis; . . . [or] medication" and also defines "health care" to include "surgery or other care or treatment rendered by a physician or physicians, nurses, paraprofessionals or health care facility, intended for the physical, emotional, and mental well-being of persons." 745 Ill. Comp. Stat. 70/3(a).

28. As they are either "medicine" or "treatment rendered by . . . a health care facility," the COVID-19 vaccines fall within section 3(a)'s definition of "health care".

29. Section 5 of the Act, titled "Discrimination," provides in pertinent part that "[i]t shall be unlawful for any person, public or private institution, or public official to discriminate against any person in any manner . . . because of such person's conscientious refusal to receive, obtain, accept, perform, . . . or participate in any way in any particular form of health care services contrary to his or her conscience." 745 Ill. Comp. Stat. 70/5.

**COUNT I – Violation of the Illinois Health Care Right of Conscience Act**
745 Ill. Comp. Stat. 70/5

30. Joel and Natalia incorporate and reallege paragraphs 1 through 29 as though fully set forth herein as this paragraph 30.

31. In late December 2021, Chicago issued its vaccine Mandate. Although the Mandate exempted some people with religious opposition to the COVID-19 vaccines, it only allowed this exemption if the person had previously submitted—and received—a religious exemption.

32. Prior to their wedding, Joel and Natalia have never had an occasion to receive a religious exemption. Thus, there was no way for them to be exempt from the Mandate's vaccine requirement.

33. In violation of section 5 of the Act, Chicago discriminated against Joel and Natalia because of their religious opposition to vaccination by (i) coercing them to violate their strongly-held, sincere religious beliefs and obtain one of the COVID-19 vaccines, and (ii) forbidding them from attending their own wedding because of their inability to receive religious exemptions from some third party prior to submitting them to the Drake, an arbitrary requirement.

34. Section 12 of the Act provides in part that "[a]ny person . . . injured by any public or private person, association, agency, entity or corporation by reason of any action prohibited by this Act . . . shall recover threefold the actual damages, including pain and suffering, sustained by such person . . . [and] the costs of suit and reasonable attorney's fees; but in no case shall recovery be less than $2,500 for each violation in addition to the costs of suit and reasonable attorney's fees." 745 Ill. Comp. Stat. 70/12.

WHEREFORE, Plaintiffs Joel Schneider and Natalia Street respectfully pray this Honorable Court enter judgment in favor of them and against Defendant City of Chicago, and award them the following relief:

    A.    Awarding them threefold their actual damages for each violation of the Act, including their lost deposits, in the amount of $112,950, plus pain and suffering;

    B.    Granting them leave to file a motion for costs of the suit and reasonable attorney's fees; and

  C. Such other relief as this Court deems fair and just.

**COUNT II – Violation of the Illinois Religious Freedom Restoration Act**
775 Ill. Comp. Stat. 35/20

35. Joel and Natalia incorporate and reallege paragraphs 1 through 29 as though fully set forth herein as this paragraph 35.

36. Under section 15 of the Religious Freedom Act, Chicago may not substantially burden Joel's and Natalia's exercise of religion unless it demonstrates that the burden is (i) in furtherance of a compelling government interest and (ii) the least restrictive means of furthering that interest.

37. Chicago's vaccine Mandate places substantial pressure on Joel and Natalia to modify their behavior and violate their religious beliefs opposing the COVID-19 vaccines, in order to get married.

38. Even assuming that preventing the spread of COVID-19 is a compelling government interest, the Mandate violates the Religious Freedom Act because the Mandate is not the "least restrictive means" of furthering that interest for at least two reasons.

39. First, as the public-health community has known for months, if not years, the vaccines against COVID-19 only provide personal benefits. As the below sample shows, they do not prevent people from contracting or transmitting COVID-19:

- In June 2021, nearly 300 COVID-positive samples showed no significant difference in viral load between 79 fully vaccinated people and 212 unvaccinated people. At the time of their positive tests, both vaccinated and unvaccinated had sufficient viral loads to make them contagious.

  [*See* Chris Barncard, *Study shows virus abundant in COVID-19 cases in Wisconsin, even among fully vaccinated*, Univ. Wisc. - Madison News, *available at:* https://news.wisc.edu/study-shows-virus-abundant-in-covid-19-cases-in-wisconsin-even-among-fully-vaccinated/ (Aug. 4, 2021).]

- A July 2021 outbreak of COVID-19 led to 469 positives; 74% were fully-vaccinated.

  [*See* Catherine M. Brown, DVM, et al., *Outbreak of SARS-CoV-2 Infections, Including COVID-19 Vaccine Breakthrough Infections, Associated with Large Public Gatherings – Barnstable County, Massachusetts, July 2021*, CDC, *available at*: https://www.cdc.gov/mmwr/volumes/70/wr/mm7031e2.htm (Aug. 6, 2021)]

- In August 2021, CDC Director Rochelle Walinsky told CNN's Wolf Blitzer that the COVID-19 vaccines can't prevent transmission.

  [Madeline Holcombe & Christina Maxouris, *Fully vaccinated people who get a Covid-19 breakthrough infection can transmit the virus*, CDC chief says, CNN, *available at*: https://www.cnn.com/2021/08/05/health/us-coronavirus-thursday/index.html (Aug. 6, 2021) (statement of CDC Director Rochelle Walensky to CNN's Wolf Blitzer).]

- By September 2021, the CDC posted that fully-vaccinated people can catch and spread Covid.

  [CDC, *Interim Public Health Recommendations for Fully Vaccinated People*, *available at*: https://web.archive.org/web/20211015015601/https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html (archive of Sept. 1, 2021).]

- In addition, in September 2021, the *New England Journal of Medicine* reported that 57.3% of the COVID-19-positive health care workers at the University of California San Diego Health System were fully vaccinated. 83.8% of this System's fully-vaccinated workers were symptomatic.

  [*See* Jocelyn Keehner, M.D. et al., *Resurgence of SARS-CoV-2 Infection in a Highly Vaccinated Health System Workforce*, New England J. Med., *available at*: https://www.nejm.org/doi/full/10.1056/NEJMc2112981 (Sept. 1, 2021).]

- Also in September 2021, an analysis of vaccination rates in 68 countries and 2,947 U.S. counties confirmed no relationship between vaccination- and positivity-rates.

  [S.V. Subramanian the & Akhil Kumar, I*ncreases in COVID-19 are unrelated to levels of vaccination across 68 countries and 2947 counties in the United States*, Eur. J. Epidemiology, *available at*: https://www.ncbi.nlm.nih.gov/labs/pmc/articles/PMC8481107 (Sept. 30, 2021).]

40. Even the CDC rejected President Biden's claim that "people vaccinated for COVID-19 'do not spread the disease to anyone else.'" *See, e.g.*, Amy Sherman, *Biden says that vaccinated people can't spread COVID-19. That's not what CDC says*, PolitiFact, *available at*:

https://www.politifact.com/factchecks/2021/dec/22/joe-biden/biden-says-vaccinated-people-cant-spread-covid-19-/ (Dec. 22, 2021).

41. Empirical data accords academic analysis. Despite fully vaccinating 82% of students and 93% of employees at a local high school, the fully-vaccinated comprise 88% of all positive cases. *See Oak Park & River Forest H.S., 2021-2022 COVID-19 Dashboard*, *available at*: https://www.oprfhs.org/covid-19/covid-19-dashboard-clone (last updated Feb. 10, 2022) (analyzing data from Aug. 13, 2021 to Feb. 10, 2022).

42. Thus, while preventing COVID-19 is important, requiring vaccination cannot be the least restrictive means to do that, as both the vaccinated and unvaccinated can catch and spread COVID-19.

43. Second, and along these same lines, while the Mandate requires Joel and Natalia to get vaccinated before they get married, it does not prevent people with COVID-19 from spreading their disease to others indoors. For example, the day before he attends a Chicago Blackhawks game, a fully-vaccinated person could (i) wake up with COVID-19 symptoms, (ii) receive a positive result from an over-the-counter test, (iii) walk into the United Center, and (iv) spread his disease without issue. As another example, unvaccinated, COVID-19-positive friends of a performing artist are free to travel to the artist's performance location and spread the disease freely during the show, without violating the Mandate.

44. Thus, even if the COVID-19 vaccines did prevent COVID-19, the Mandate is underinclusive and is not the least restrictive means to achieve Chicago's interest in preventing the spread of COVID-19.

45. Chicago's Mandate burdens Joel's and Natalia's exercise of religion in violation of section 15 of the Religious Freedom Act, 775 Ill. Comp. Stat. 32/15.

46. Section 20 of the Religious Freedom Act allows Joel and Natalia to "obtain appropriate relief against a government," here their lost deposits and mental anguish from Chicago's transformation of their dream wedding into a nightmare.

47. Moreover, Joel and Natalia are entitled to punitive damages because the Mandate was the product of Chicago's evil motive or intent, or of Chicago's reckless or callous indifference to Joel's and Natalia's free-exercise rights.

WHEREFORE, Plaintiffs Joel Schneider and Natalia Street respectfully pray this Honorable Court enter judgment in favor of them and against Defendant City of Chicago, and award them the following relief:

A.  Awarding them their actual damages for each violation of the Act, including their lost deposits, in the amount of $37,650, plus pain and suffering;

B.  Punitive damages in an amount sufficient to punish Chicago for its wrongdoing and to deter others from committing similar torts;

C.  Granting them leave to file a motion for costs of the suit and reasonable attorney's fees; and

D.  Such other relief as this Court deems fair and just.

Dated: February 28, 2022　　　　　　　　Respectfully submitted,
　　　　　　　　　　　　　　　　　　　　JOEL SCHNEIDER and NATALIA STREET

　　　　　　　　　　　　　　　　　　　　By: __/s/ Jared M. Schneider_____
　　　　　　　　　　　　　　　　　　　　　　One of their attorneys

Jared M. Schneider, Esq. (ARDC# 6318314)
400 West Seventh Street, Suite 105C
Bloomington, Indiana 47404
Ph: (812) 758-4888
Email: jared@jaredschneider.com