UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOEL SCHNEIDER and NATALIA STREET,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF CHICAGO,<br><br>Defendant. | No. 22 CV 1031<br><br>Judge Manish S. Shah |

**ORDER**

Defendant's motion to dismiss for failure to state a claim, [23], is granted and the complaint is dismissed with prejudice. Enter judgment and terminate civil case.

**STATEMENT**

## I. Background

Plaintiffs Joel Schneider and Natalia Street planned to marry at the Drake Hotel in February 2022, but their religion prohibited them from receiving vaccines. [18] ¶¶ 2, 9–13.[1] The City of Chicago issued a Public Health Order that required proof of COVID-19 vaccination for gatherings in large areas, such as banquet halls and hotel ballrooms. [18] ¶¶ 16–17. The Public Health Order contained an exemption for "individuals who have previously received a medical or religious exemption" and who could provide proof of the exemption and a recent negative COVID-19 test. [18] ¶ 19. Because Schneider and Street did not have an exemption, they canceled their wedding and lost their deposit with the Drake Hotel. [18] ¶¶ 21–23, 25–26. They filed suit with claims under the Illinois Healthcare Right of Conscience Act, 745 ILCS 70/1 *et seq.*, and the Illinois Religious Freedom Restoration Act, 775 ILCS 35/20 *et seq.* [1]. I dismissed the Healthcare Right of Conscience Act claim with prejudice and the Religious Freedom Restoration Act claim without prejudice. [17]. The plaintiffs filed an amended complaint, [18], and the City of Chicago brings another motion to dismiss for failure to state a claim. [23].

---

[1] Bracketed numbers refer to entries on the district court docket and page numbers refer to the CM/ECF header placed at the top of filings.

**II.   Analysis**

A complaint must contain factual allegations that state the grounds of the plaintiff's claim in a way that "raise[s] a right to relief above the speculative level" to meet federal pleading requirements. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court takes all well-pleaded factual allegations in the complaint as true and draws reasonable inferences in the plaintiff's favor. *Bronson v. Ann & Robert H. Lurie Child. Hosp. of Chicago*, 69 F.4th 437, 448 (7th Cir. 2023). The court does not accept conclusory allegations that just re-state the elements of a claim. *Id*. The court then considers the well-pleaded allegations and determines whether the plaintiff's claim is plausible, which requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must "give enough details about the subject matter of the case to present a story that holds together." *West Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675–76 (7th Cir. 2016) (internal citations omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

   A.   **Illinois Religious Freedom Restoration Act**

To state a claim under the Illinois Religious Freedom Restoration Act, a plaintiff must first allege that government action has substantially burdened the exercise of her religion through any rule or enactment, even if it is a rule of general applicability. *See* 775 ILCS 35/15. Once the plaintiff has established the substantial burden on the exercise of her religion, the government may defend its rule by showing that the "application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest." *Id*.

Plaintiffs' first attempt to allege an IRFRA claim was dismissed because plaintiffs did not allege that the City's Public Health Order placed a substantial burden on the free exercise of their religion, primarily because there was a religious exemption to the vaccine requirement. A substantial burden on the free exercise of a religion is "the presentation of a coercive choice of either abandoning one's religious convictions or complying with the governmental regulation." *Diggs v. Snyder*, 333 Ill.App.3d 189, 194–95 (5th Dist. 2002). A plaintiff may also show a substantial burden when "the state conditions receipt of an important benefit upon conduct proscribed by a religious faith … thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd. of Indiana Employment Sec. Division*, 450 U.S. 707, 717–18 (1981). Under either standard, plaintiffs fail to plausibly allege that the City's vaccine requirement, with a religious exemption, substantially burdened their religious practice or beliefs.

Plaintiffs make several new allegations in the amended complaint, most of which relate to the language of the Public Health Order that exempts "[i]ndividuals who have previously received a medical or religious exemption." [24] at 18. First, plaintiffs allege that because "they had never received an exemption, and receiving an exemption was impossible for them, [they] could not fall within this exemption, and Chicago's Mandate forced them to cancel their wedding." [18] ¶ 3; *see also* [18] ¶¶ 31–32. Plaintiffs allege that they had never before had reason to ask for a religious exemption from a COVID-19 vaccination requirement. *See* [18] ¶¶ 22, 35–37. They allege that the Public Health Order "created an impossible condition to its religious-exemption provision" because "in order for [plaintiffs] to have 'previously received' a religious exemption and fall within the Mandate's religious-exemption section, both of them would have needed to be in a place that both required COVID-19 vaccinations and granted religious exemptions to the requirement to be vaccinated." [18] ¶¶ 31–32. There is nothing in the complaint to support the plaintiffs' conclusion that they had to have received a religious exemption from a third party for a separate reason in order to fall within the Public Health Order's religious exemption.[2] Instead, their interpretation of "previously received" is a "naked assertion[] devoid of further factual enhancement," which need not be accepted as true when reviewing the complaint on a motion to dismiss. *See Iqbal*, 556 U.S. at 678.

Plaintiffs also allege that there was "no ascertainable way" for them to receive a religious exemption and that "nothing in Chicago's mandate allowed Joel and Natalia to request an exemption directly from Chicago." [18] ¶¶ 26, 33. Plaintiffs conclude "[f]rom December 21, 2021, when the Mandate came into effect, until January 5, [2022], when [they canceled their wedding], there was no venue or mechanism for Joel and Natalia to obtain a religious exemption." [18] ¶ 34. But, again, the plaintiffs point to nothing in their complaint or the health order itself to support a reasonable inference that the City of Chicago would not provide a religious exemption or that religious exemptions were impossible to receive. Their notion of impossibility amounts to an unreasonable interpretation of the Order—that the absence of more specific directions on how to obtain an exemption meant that no exemption was obtainable. *See Iqbal*, 556 U.S. at 678 ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation.") (internal citations omitted).

---

[2] Plaintiffs state that federal complaints plead claims, not facts, and cite to *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714 (7th Cir. 2006). *See* [25] at 4. The Seventh Circuit recognized that *Kolupa* had been abrogated by the federal pleading standard articulated in *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal*. *See EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 777 (7th Cir. 2007). A federal complaint need not include all of the evidence to prove a claim, but it must "actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (internal citations omitted).

3

Finally, plaintiffs allege that after a "reasonable investigation" they were "unaware" of a place that could give them an exemption. [18] ¶ 38. But just as in their first complaint, the only investigation that the plaintiffs allege they made were two unanswered phone calls to the City of Chicago's Corporation Counsel. [18] ¶ 24. As I found in the last motion to dismiss, two unanswered phone calls to the City are insufficient to show that the religious exemption was inaccessible. The plaintiffs have not plausibly alleged that the religious exemption to the Public Health Order was illusory, therefore they have not alleged a coercive choice between their religious beliefs and complying with the Public Health Order

Finally, the plaintiffs allege that "Chicago's vaccine Mandate placed substantial pressure on Joel and Natalia to modify their behavior and violate their religious beliefs opposing the COVID-19 vaccines, in order to get married at a venue they contracted with 18 months prior and had already paid a substantial amount of money to secure." [18] ¶ 40. This echoes how the Supreme Court discussed a "substantial burden" in *Thomas v. Review Bd. Of Indiana Employment Sec. Division*, 450 U.S. 707 (1981), but plaintiffs miss the full context of the language. The Supreme Court wrote: "[w]here the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists." *Thomas*, 450 U.S. at 717–18. Plaintiffs have not explained why getting married at a desired or contracted-with venue is a government or public benefit. Their situation does not fit within the type of substantial burden described by the *Thomas* case.

Plaintiffs also allege that "[t]he Mandate forced Joel and Natalia to abandon either their religious beliefs or the wedding deposits they made prior to Chicago effecting the Mandate." [18] ¶ 39. While losing money can be a substantial burden on the free exercise of religion, plaintiffs had the option of obtaining a religious exemption to the Public Health order and have not alleged that the cost of that exemption was prohibitive or that they had another reason not to seek an exemption. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 720–23 (2014) (employer's alternative option not to provide health insurance to employees would be costly and disadvantageous in the labor market, so the alternative does not alleviate the burden on employers' religious beliefs). Instead, after two calls to the Corporation Counsel went unanswered, the plaintiffs summarily concluded that obtaining a religious exemption in time for their February 2022 wedding was "impossible." [18] ¶¶ 23–26. As discussed above, this conclusion is not entitled to the assumption of truth, *Iqbal*, 556 U.S. at 678–79, and there are not sufficient factual allegations in the complaint to support a reasonable inference that plaintiffs' religious beliefs were substantially burdened because the Public Health Order contained a religious exemption. Plaintiffs' claim may be "conceivable," but it is not "plausible," *id.* at 680, so it is dismissed.

B.    **Illinois Tort Immunity Act**

Even if plaintiffs had been able to state a claim for violation of the Illinois Religious Freedom Restoration Act, their complaint only requests money damages and those damages are prohibited by the Illinois Tort Immunity Act. Immunity under the ITIA is an affirmative defense. *See Sablik v. County of De Kalb*, 2019 IL App (2d) 190293, ¶ 12. Plaintiffs need not anticipate and plead around affirmative defenses, but when the allegations of the complaint set forth everything necessary to satisfy the affirmative defense, it can be an appropriate basis for dismissal. *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 566 (7th Cir. 2023).

The Illinois Tort Immunity Act gives local public entities and public employees immunity from liability arising out of the operation of government. *See Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill.2d 484, 490 (2001). The City argues that plaintiffs' claims are barred by the ITIA because their damages were caused by the issuance of a public health order, an act of local government that falls squarely within the province of the ITIA. The ITIA provides protection to local governments for liability arising out of the adoption of a law or enactment, discretionary policy decisions, and policy decisions about actions to promote the public health of the community. *See* 745 ILCS 10/2-103, 10/2-201, 10/2-109, 10/6-104(a). In turn, the plaintiffs argue that the ITIA does not apply to civil rights claims such as IRFRA claims, and that IRFRA supersedes the ITIA.

The "cardinal rule of statutory construction" is to give effect to the legislature's intent, and the best way to ascertain that intent is through the text of the statute. *Moore v. Green*, 219 Ill.2d 470, 479 (2006). When interpreting two statutes whose plain language seem to conflict, Illinois courts first determine if the statutes can be read in concert with one another. *Id.* A court should presume that the legislature would not enact a law that completely contradicts an existing law without expressly repealing it. *Id.*

While past case law suggested that the ITIA only applies to claims that "sound in tort," *Strauss v. City of Chicago*, 2022 IL 127149, ¶ 76, held that the "plain language of the Act applies to claims for damages under the Illinois Constitution." The referenced provision of the ITIA defines "injury" (for which local governments are not liable) as "any injury alleged in a civil action, whether based upon the Constitution of the United States or the Constitution of the State of Illinois, and the statutes or common law of Illinois or the United States." 745 ILCS 10/1-204. IRFRA is an Illinois statute, and the logic of *Strauss* instructs that local governments (when acting in a manner included in the statute) are immune from a damages claim based upon IRFRA.

Further, the ITIA can be read in concert with IRFRA to state that local governments are immune from damage claims, but not claims for injunctive or other forms of relief authorized by IRFRA. *See* 775 ILCS 35/20 ("If a person's exercise of

5

religion has been burdened in violation of this act, that may person … may obtain appropriate relief against a government."). It is likely that the Illinois Supreme Court would hold that the ITIA protects local governments from damages claims under IRFRA.

The Public Health Order is an "enactment" and therefore the City is immune from damages caused by its adoption. A local public entity is not liable for an injury caused by adopting a regulation. *See* 745 ILCS 10/2-103; *see also* 745 ILCS 10/1-203 (including "regulation" within definition of "enactment"). "Regulation," in turn, "means a rule, regulation, order or standard, having the force of law, adopted by an employee or agency of … a local public entity pursuant to authority vested by constitution, statute or ordinance in such employee or agency to implement, interpret, or make specific the law enforced or administered by the employee or agency." 745 ILCS 10/1-208. The Public Health Order was issued under the authority granted by the Municipal Code of Chicago to the Chicago Commissioner of Health "to implement emergency measures to stop the spread of communicable diseases, and to protect the health, safety, and welfare of the City's residents." [24] at 16.[3] The document itself is titled "Order" and provides for arrest, fines, and closure as penalties for violation of its provisions. [24] at 16, 18. The Public Health Order is a regulation with the force of law, adopted by a local public entity pursuant to an authority vested in it by statute, so Section 2-103 of the ITIA protects the City of Chicago from damages liability arising out of the adoption of the Public Health Order.

Plaintiffs have twice attempted to allege a claim for relief and have been unable to state a claim. The amended complaint is dismissed with prejudice.

ENTER:

Date: November 20, 2023

Manish S. Shah
U.S. District Judge

---

[3] I can consider the language of the Public Health Order on a Fed. R. Civ. P. 12(b)(6) motion because it is a document referred to within the complaint and central to plaintiffs' claim. *See Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998); *see, for example* [18] ¶¶ 16–20 (references in the amended complaint to the Public Health Order).

6